Good morning. May it please the Court. Your Honors, my name is Stuart Headley, and I'm here today representing the Bank of England of England, Arkansas, the petitioner in this case. The Bank of England is requesting that this Court reverse an order granting injunction that was entered by the United States Bankruptcy Court for the Eastern District of Arkansas. In that decision, the Bankruptcy Court determined that a joint venture operated by the debtors did not meet the definition of a partnership under Arkansas law. You don't want us to unring the bell on the sale of the rice, do you? No, Your Honors. The sale has gone forward and the proceeds of that rice are sitting in the trustee's account. And you're not looking to move them from there? No. If the Court were to reverse the Bankruptcy Court's decision, we believe that that money should be released or not be subject to the trustee's claims against that rice, but be turned over to the secured parties. So we're not attempting to undo the sale itself, but outside of that, there's property that belongs to the joint venture that would not be property of the bankruptcy estate. And we're asking that the Court... Well, normally you wouldn't turn them over to the secured parties of the debtor at this stage, would you? No, Your Honor. It's only because you claim to be secured parties of a non-debtor. Correct, Your Honor. The non-debtor joint venture, its property is the proceeds of those sales, including... Do you think on this preliminary injunction record you've established that issue to the point where we would rule as a matter of law in your client's favor? Well, we believe on the record that the... Based on the record on the preliminary injunction, we believe that the determination that the joint venture was not a partnership is what's at issue. The issue surrounding what... I don't think that would finally resolve entitling the proceeds. We believe that issue is for later determination. But at this point, we believe that the determination that the joint venture at issue was not a partnership was an error that's subject to reversal. And from that decision that the bankruptcy court's determination that the rice grain proceeds or the rice grain at that point was property of the bankruptcy estate was also an error and allowing the trustee to move forward with selling it was also an error with the caveat that it has since gone forward and they're liquidated to cash proceeds in the trustee's account. Your Honor, this case involves the Chapter 7 bankruptcy filing by a married couple Dudley and Peggy Webb. They operated a farm business. They entered into a joint venture agreement for the purposes of that farming business. The joint venture agreement states that the name of this partnership shall be the Dudley R. Webb Jr. Farms Joint Venture. What about the evidence that part of the purpose was to give the wife some business experience? I'm sorry, Your Honor, could you repeat that? What about the evidence that part of the reason for creating it was to give the wife some business experience? That was part of the testimony that Mr. Webb gave at the hearing and that's certainly a justifiable reason for making her a partner, but the terms of the partnership or the joint venture agreement in this case are controlling and the case law that we cite in our brief is fairly straightforward that when you're dealing with the joint venture, it's a matter of contract. When there is a contract in place, the terms of that contract govern the intent of the parties. What about the terms of the contract that said it shouldn't be construed as a partnership agreement? Well, that's consistent with joint ventures being a separate animal than partnerships. Not all joint ventures are partnerships. And the case that we cite on that position, N. Ray Roxy Rolling Brink Joint Venture, hits on that point that even when the joint, in that case, they stated that they didn't intend to create a partnership as well. And as the court noted in its footnote that that's a common term for joint venture agreements to limit the member's authority to bind the venture, not to a general partnership level, but strictly to the limited venture that the joint venture consists of. So it's essentially a joint venture partnership that that provision simply states it. Well, at a minimum, it establishes an ambiguity, doesn't it? I don't believe it does, Your Honor. How can it not? It says this agreement shall not be construed to be a partnership. You say it's a partnership as a matter of law on the four corners of the agreement, by reason of the other terms of the agreement. That's correct, Your Honor, and by operation of law. The contract states that they're forming a joint venture. But it's all a question of intent under Arkansas. Don't talk about by operation of law. Well, they intended to form an entity subject to terms that, by statute of Arkansas, those terms create a partnership, whether they intended to or not. Specifically, the partnership code in section 4-46202A states that the association of two or more persons to carry on as co-owners, a business for profit, forms a partnership, whether or not the persons intend to form a partnership. So your position this morning is an intense irrelevant? Absolutely not. The intent for the terms of that venture, if the terms satisfy the meanings of that statutory provision, then it would meet the definition of a partnership. And I believe that the terms set out in the joint venture agreement show that they did intend to form a partnership for the limited purpose of their farming business, that being a joint venture, as opposed to a general partnership, given the paragraph included in there that they did not intend to form a partnership. Your Honor, I believe that the bankruptcy court's review of this case, which was in context of their request for an injunction relating to the motion to sell the rice grain, we believe in looking beyond the four corners of the agreement, at certain aspects of how the business was operated, should not have been done. We were clear and established that a partnership was, in fact, intended to be created and a separate entity was, in fact, created by the debtors with respect to their... I don't understand your position on intent. It's completely different from my interpretation of what the district court thought it was deciding. The bankruptcy judge says that the intent of the parties governed whether it's a separate entity or not. Correct, Your Honor. And then looked at the evidence of intent in this joint venture agreement and found it absent, vis-a-vis separate entity. Now you're saying this morning intent is irrelevant. I don't understand your position. I did not mean to say that intent was irrelevant. I believe that intent is relevant and that's the law. It's governed by intent. Then what's the relevance to this Arkansas partnership statute? Well, the Arkansas statute provides where they intend to run a business under subject to certain terms, that intention is applicable. And if that business is run under those terms, then a partnership is formed. Simply forming an entity that meets all the definition and requirements of a partnership... So that automatically equals separate entity? If it reaches the definition of a partnership, yes, Your Honor. Okay. The Arkansas Supreme Court of Arkansas, the appellate case you're relying on, I'm totally befuddled. Give me the cases to read. The cases are Slayton v. Jones? Yeah, that's what the bankruptcy judge relied on. Correct. And we believe that that case supports a finding that a partnership was in fact formed here as the intent as embodied by the joint venture agreement and the terms in that joint venture agreement show an intent to form a partnership. Any other Arkansas cases? Yes, Your Honor. Henry Curtis is a bankruptcy case of similar facts. So it's not an Arkansas case? It is an Arkansas case, Your Honor. It's a federal bankruptcy court in Arkansas? Excuse me, it's a... Yes, Your Honor, it's an Eastern District of Arkansas bankruptcy case. That's not controlling of us. I understand, Your Honor. I believe those two cases support our position as well as the Arkansas statutes as to whether a formation of a partnership has taken place. We believe that looking at the record before the court that the facts clearly show that it was the intent of the parties to form a partnership and that the property of that partnership should be separate property from the individual debtors. I'm in about time for rebuttal, so if there's no further questions, I turn it over to you, Your Honor. Mr. Keech? Good morning, Your Honors. May it please the court, my name is Kevin Keech. I represent the Chapter 7 trustee. In this particular case, M. Randy Rice. Should time allow, I would like to address three main issues. My question, overriding all else, is what do you think the effect of the district court's decision is on future proceedings in this bankruptcy case? I'm not sure I understand. And on all other adversary proceedings. I'm not sure I understand the court's case. You see, there was the need to sell the rice. Correct. And there was a preliminary injunction entered, or an injunction entered, sell the rice. Yes. And put the proceeds in the hands of the trustee pending further appeal. Then the bankruptcy judge says, and I'm entering a permanent injunction on a preliminary injunction record. And I'm deciding the separate entity issue. Yes, Your Honor. Now, a permanent and permanent finding that simply supported the temporary injunction, I wouldn't have any problem. But if this is an appeal from a permanent injunction, and that permanent injunction decided that issue on an inadequate record, now I got a big problem. Because I don't know where you are going, and you've managed to divvy up your adversary proceedings here. So I'm going to take this issue today, and this issue tomorrow, and this issue the next day. So I want to know this first ruling, what use, sir, do you think you can make of it if we affirm? Part of the, if the court upholds the district court's affirmation of the bankruptcy court that a joint venture is property of this debtor's bankruptcy estate, there is a pending adversary proceeding. That didn't have to be ruled upon to sell the rice. That didn't, we didn't need a final order to sell the rice to get there. We did in order to have jurisdiction over the rice, Your Honor, to determine that the rice was property of the bankruptcy estate. No, there had to be a prima facie or plausible claim to jurisdiction that warranted, as an emergency matter, the sale of a perishable asset in the hands of apparently the debtor, perhaps a related or even unrelated entity. If it please the court, the fundamental issue was 541, it handles, which is property of the bankruptcy estate. I know what it was. I also don't have any problem with, if nothing else, 28 U.S.C. 1651 would authorize a writ to sell that rice without a final resolution of the property question. Trust me, if you've never heard of that statute, it's the All Writs Act. And I'm sure a bankruptcy court has related powers. So the bankruptcy judge didn't have to make this final ruling on what I suspect was an insufficient record to finally determine the separate entity issue. So I'm very reluctant to affirm that. With all due respect, Your Honor, the issue we had was the bank was attempting to exercise control over the rice unilaterally without going to the bankruptcy court. We had a motion for relief from state pending. While the motion for relief for state was pending, where the bank would bear the burden of proof to indicate whether the rice was property of the bankruptcy estate, they unilaterally attempted to exercise control over the rice, forcing the bankruptcy trustee to seek an injunction. I'm with you all the way. And I'm saying that if emergency power was needed, the All Writs Act would provide it to stop the bank from intruding on the orderly bankruptcy proceedings. But that didn't warrant a permanent injunction finally resolving for all future proceedings a fact-intensive issue that probably deserves a trial. And, Your Honor, there was an all-day trial. There were 78 exhibits. There were extensive testimony of probably 295 pages. And the testimony of the trustee before the bankruptcy court was that he needed to have a determination on the determination of the joint whether to put that joint venture into its own bankruptcy to protect avoidance actions that may exist with regard to actions of the bank taken before within 90 days before the bankruptcy. If that was a court proceeding, when is it appealable? I believe it was appealable upon the day the court entered the final written ruling. Even if the court had not used the magic words permanent injunction, you're saying that that would have been appealable to us on your 1958 D. I think that's... Is the bank being super foreclosed here? No, I don't think so, Your Honor. The only issue that Mr. Headley indicated... You don't have any problem with us writing that insofar as the separate entity question was relevant to the on a less than complete record. I believe, Your Honor, that the record was complete on the issue of... That's fine, but I don't think it's properly appealable except that the court mistakenly called this a permanent injunction. You don't issue a permanent injunction to decide a preliminary legal issue in a case. The purpose of the bankruptcy stay is to actually create a injunction over all property of the estate. I think the bankruptcy court's ruling was to prevent... Stay rulings aren't appealable to us unless they end the case. The point, Your Honor, of the permanent injunction was to already put into place what already operated by operation of law, and the reason it was important was because the bank was attempting to act and usurp the bankruptcy court's jurisdiction. I believe the bankruptcy court issued that permanent injunction to prevent the bank from going outside the parameters. It was the usurpation other than controlling the proceeds of the rights. Disposition of the rights, Your Honor. Taking control of the rights. It was. This was a jurisdictional overreach or insofar as the appellate process is concerned, and it bothers me what the law, the case you are hoping to create from us is going to be down the road in these proceedings. What more is at issue as far as property in this bankruptcy? What more is at issue, Your Honor? What property? Once the rights was determined. I think that's in the matter that's the adversary proceeding that is currently stayed. The issue ultimately, one of the issues there is Bank of England perfected in its lien filing as to the joint venture. I think the evidence will probably come out that the lien filing was in the name of the joint venture and the joint venture only as it pertains to the rice. The trustees position advocated in that particular position is that the debtors had an interest in that rice to such a degree that to be perfected, the co-debtor Peggy Webb's name needed to be on the UCC1 financing statement. I'm not a serious student of bankruptcy law, but it strikes me that the joint venture or separate entity question might have a different answer in that proceeding than in this proceeding. That perfection of a claim or an interest might be different than power to avoid the bankruptcy stay and grab the rice, so to speak. And therefore, I don't want to preclude full development of the issue you just stated in the other proceedings. How much property is left to be fighting involved? There is approximately $1.9 million of proceeds in the trustee's account. All of the assets have been liquidated. The bankruptcy court, once the appeal is resolved, will be making a determination as to who is to receive those assets. To Judge Loken's point earlier in the earlier argument, it's important for the-if, for example, the court grants and says that this is not a joint venture or says it is a joint venture or a general partnership to such a degree that it's not of the estate. As Mr. Headley indicated, the bank's going to want those proceeds back. The trustee's not going to be able to administer those assets for the benefit of the unsecured creditors of Mr. and Mrs. Webb and ultimately may not be able to receive a fee associated with his administration of the- Are you saying that all other properties have been distributed? No, they have not been distributed. They've been collected and awaiting a determination of liens and encumbrances. What's the value of those? I'm sorry, Your Honor? What's the value of those? All assets have been liquidated. $1.9 million approximately is the total that is in the trustee's account. I think with respect to the rice, it's approximately $1.3 million, Your Honor. And what's this preferential transfer issue that's lurking? Involving the bank? Yes. There was approximately $1 million paid by the debtor to the bank within 90 days before the debtor's bankruptcy filing. And what's the effect of this, quote, permanent injunction on that issue? If the court is indicating what is the effect of the determination by the bankruptcy court of the joint venture being property of the estate, the trustee has argued in the other adversary proceeding that because, in essence, this is all one large estate, the debtor's assets and the alleged joint venture's assets are all one and the same, the transfer by the debtors to the bank within 90 days before the bankruptcy filing, if the lien is not perfected, then there's a preferential transfer. You want to get a tremendous leg up on these other proceedings by getting this affirmed, by getting this permanent injunction affirmed, which arose only because of the need to sell the rice. And to make a determination as to whether the trustee needed to put that joint venture into its own separate bankruptcy. Put it in its own separate bankruptcy. What's the big deal about that? It would be a waiver of the argument, Your Honor. It would allow the bank, then, to use that argument to say, well, you waived or you abandoned that particular statement. Well, you guys are both too clever by far. The bank was foolish to push this the way they did and to push this appeal and you're overreaching on the issue. I don't know what we do. The issue in my mind is, as Judge Smith indicated- Maybe dismiss this as premature and wait until we have a real final order and then sort it out. The proceeds have been collected. And the heck with these multiple adversary proceedings that allow you to come to us three different times. Can we decide this just on the basis of what was necessary as far as the rice issue? I think the fundamental issue in this case is, was the rice property of the bankruptcy estate under 541 of the Bankruptcy Code, which includes legal and equitable interest? Yes, it is. And as Judge Smith indicated earlier, Judge Marshall stated, I believe, the fundamental issue. Paragraph 13 of the Joint Venture Agreement indicates that a partnership was not intended. The sole basis of all of their argument, of the bank's argument, is that this is a general partnership. And if it's a general partnership, it's not property of the bankruptcy estate. Judge Marshall looked at the Joint Venture Agreement, paragraph 13, and indicated that there was not an intent by the parties to create a general partnership. And since there's not a general partnership, we have basically a commingling of assets so that we have one big lump sum of assets so that the trustee knows what assets he's administering. And the issue should be fairly dispositive in paragraph 13. The court really doesn't need to look any further other than to say that there was no intent by the parties to create a partnership. And the testimony that was given... That doesn't mean it wasn't a separate entity for various purposes. The court looked at the legal and equitable interests, Your Honor. It spent a whole day looking at the conduct of the parties. Looked at the testimony of the actual debtor. Mr. Webb testified. The bank officer testified. The trustee testified. All talking about the issues associated with how this entity was operated. To actually require additional testimony on that would be unnecessary because the court actually heard all of the evidence it really needs to hear to make a determination of, is this the rice and the other assets that were listed, or equipment, were they property of the bankruptcy estate? And it would... The court's concerned about piecemeal litigation. Should this court not make this decision and affirm the district court, we may be dealing with litigating this whole issue all over again in the other adversary proceeding. The reason there weren't two... One adversary proceeding all together is because of the timing nature. The court can look at this. The case was filed in February. The bank started saying that they wanted the rice and they wanted to get it sold and the issues of spoilation. And the court had to hear a hearing fairly quickly. By April, we're having an all-day hearing on this issue. So, after we had a determination from the court of the joint venture versus the individual debtors, an adversary proceeding was filed in order to set aside preferential transfers and to avoid liens and to make a determination, Judge Murphy, how to distribute these assets. Is that typically the case that there are more than one adversary proceeding? Yes. It's very regular, Your Honor. Yes. My time is up. Thank you, Mr. Headley. I have some time. Counsel has four and a half minutes for a moment. Your Honor, just to address the point you've made as far as the rulings and the determinations as to the joint venture status of the entity at issue here, you're correct that the trustee is attempting to use these rulings and other various adversary proceedings and has taken the position that, as counsel pointed to, that certain security interests are unperfected or were not perfected properly by being in the name of that joint venture as opposed to the individual debtors. This case, as well as other cases that may be under similar facts, I think the ruling, if affirmed, would have a sweeping effect in the lending community and specifically in the bankruptcy. How in the lending community? I don't understand that. This is so fact specific. What banker in Arkansas is going to be terrified by this ruling? Well, I believe the bank's ability to rely on the form of the entity that its borrower is doing business as. In this case, the joint venture or it being a partnership. Not only the- Banks misread documents all the time. I understand, Your Honor. No two cases are the same. In this case, there were over 30 loan documents with the Bank of England being in a joint venture. The trustee says they're all over the map in terms of the way they're written up. Well, there's discrepancies between them, but they all indicate that this is a separate entity, not only with the Bank of England's loans, but also with the USDA and its FSA programs. There was multiple loan documents executed by the debtors in the form of the joint venture representing it as a partnership on those documents. In order, we believe that an affirmance would cause havoc in that regard. It seems like it would only create havoc for people that don't draft their documents well and include the inherent ambiguities that are present here. Well, in this case, the underlying joint venture agreement, I believe, was obviously a document not drafted by the lending parties at issue, but the debtors themselves. But the banker saw the document and proceeded to allow all kinds of commingling, as I understand the facts as written in the briefs. And it's our interpretation- Bankers that do that often get burned. It's our interpretation that the caveat in there, as far as it not being a general partnership, still opens the door for it being a joint venture partnership and a separate entity, for that matter. And we believe that reversing this, the court's ruling, so that a determination as to what actual entity status this was and how it affects the bankruptcy should be determined by a complete hearing on that matter. What additional evidence would you present at a new trial, so to speak? Trustee says that basically we've had a full trial on this issue. Well, there's additional evidence, additional testimony. I can't speculate as to- Well, you say the four corners of the document end of case. If that's wrong, why shouldn't we just affirm it? Well, I believe the four corners of the document do show that a separate entity partnership was intended to be created. If there's issues as to the ambiguity of that contract, there was no specific finding by the bankruptcy court on that issue, and we did not have an opportunity to- Well, you don't have to make findings as to ambiguities. Well, we believe that issue could be further developed as far as- What opportunity did you not have? Was the trustee change position here somehow? Well, the trustee at the time of that hearing, those issues weren't before the court. What issues? As far as ambiguity of the contract in the- But he said there was a full trial on the separate entity issue. There was a full trial with respect to the- Which your client put the contract on the table and said, here it is, we win. And then evidence developed. So why do we need a new trial? I believe the issues before the court at that point were the preliminary injunction and the motion for relief from stay. The separate entity issue was an issue that we had raised with respect to that, but it wasn't a full hearing on that determination. So we would ask that the court be reversed. I'd need to study the record on that. That's, I think, important. If my time is done, so if there's no further questions, I thank you for your time. Thank you, counsel. You were well prepared. Argument was helpful. We'll take it under advisement.